## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| EDWARD RASCHEN, an individual, | ) | |
| | ) | |
| Plaintiff | ) | Case No.: |
| | ) | |
| UNIFIED SCHOOL DISTRICT NO. 506 | ) | |
| ALTAMONT, KS, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff EDWARD RASCHEN ("Plaintiff") hereby complains against Defendant UNIFIED SCHOOL DISTRICT NO. 506 ("USD 506") as follows:

### NATURE OF ACTION

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et. seq*. ("USERRA"). It is brought by Plaintiff against Defendant USD 506.

### PARTIES

2. Plaintiff, Edward Raschen ("Plaintiff"), is a citizen of the United States and a resident of Kansas. Plaintiff is employed by Defendant USD 506, at 401 South High School Street, Altamont, KS 67330, as an Assistant Principal at Labette County High School. At all relevant times herein, Plaintiff is or was a Captain (paygrade O-3) in the Kansas Army National Guard ("KANG").

3. At all relevant times, Plaintiff was a qualified employee and member of the uniformed services for purposes of 38 U.S.C. § 4303(3), (9), and (16).

4. Defendant USD 506 is a political subdivision or governmental unit of the State of Kansas, with the power to contract, including contracts of employment, and is subject to suit. At all times relevant, USD 506 is an employer for purposes of 38 U.S.C. § 4303 (4)(A)(iii) and § 4323(i).

5. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of Defendant USD 506, such individuals at all times acted on behalf of Defendant USD 506 within the scope of their respective employments and agencies.

## JURISDICTION AND VENUE

6. This complaint arises under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§4301-4335. The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3). Venue is proper because Defendant USD 506 is an employer within this district, as provided in 38 U.S.C. §4323(c) (2), 28 U.S.C. §1391(b).

7. Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."

## GENERAL FACTUAL ALLEGATIONS

8. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained within paragraphs 1 through 7, inclusive, as though set forth at length herein and made a part hereof.

9. Plaintiff is a resident of Coffeyville, Kansas and a member of the KANG. Plaintiff joined the KANG 13 years ago and was at all times herein performing various periods of military service during his employment with USD 506.

10. Defendant USD 506 hired Plaintiff in 2012 and knew Plaintiff was in the KANG when it hired him.

11. In June 2017, during Plaintiff's second year as Assistant Principal and Athletic Director, he was performing military service obligations and ultimately deployed with the 35th Infantry Division. On the day Plaintiff became aware of the deployment, he met with USD 506's head principal, Mr. Shane Holtzman, and Superintendent, Dr. John Wyrick, to inform them of the pending deployment. Plaintiff also sent an email to faculty and staff informing them of the same. Plaintiff timely provided USD 506 copies of his deployment orders as soon

as they were available. Plaintiff informed USD 506, faculty and staff, he intended to return to his role as Assistant Principal and Athletic Director upon completion of his deployment. Prior to and during his deployment Plaintiff never expressed to USD 506 or coworkers any desire to resign his position as Assistant Principal and Athletic Director.

12. On July 8, 2017 Plaintiff left the country to begin his overseas deployment. Plaintiff remained in touch with USD 506 throughout his deployment sending several emails between August 2017 and March 2018.

13. In March 2018, Plaintiff returned form deployment and was honorably discharged. On March 22, Plaintiff met with USD 506, Mr. Holtzman and Dr. Wyrick to timely apply for reemployment and discuss his return to work. Defendant USD 506 informed Plaintiff that because he would only be working approximately 38 days, he would not be receiving full pay from May through July.

14. Defendant USD 506 suggested Plaintiff could work as a driver's education instructor to supplement his salary from May through July. Defendant USD 506 promised to set Plaintiff a driver's education schedule, but never did. It also offered to pay Plaintiff a daily rate over the summer if he came into work on non-contract days during the month of July. Defendant USD 506 requested Plaintiff return to work on March 26, while Plaintiff was still on military leave, to attend a school district meeting. Defendant USD 506 never informed Plaintiff he would not be returning to his previous role as Athletic Director.

15. On March 26, 2018, while Plaintiff was on campus to attend the school district meeting, Dr. Wyrick approached Plaintiff in a hostile manner and berated him about his military service obligations in front of other faculty members. Dr. Wyrick was furious with Plaintiff because Mr. Kevin Cole, a school board member, approached him about Plaintiff's reduced salary. Plaintiff explained he did not approach Mr. Cole, his father-in-law did. During the discussion, Dr. Wyrick handed Plaintiff a contract for the 38 days of pay he was promised. Plaintiff noticed the contract did not include pay for his role as Athletic Director to which Dr.

Wyrick promised a new contract. Once again, USD 506 did not inform Plaintiff he would not return to his position as Athletic Director.

16. Defendant USD 506 asked Plaintiff to chaperone the high school prom on April 14 while he was still on military leave.

17. On April 16, 2018, Plaintiff's first day back to work, Mr. Holtzman, finally told Plaintiff he would not be returning as Athletic Director. Mr. Holtzman told Plaintiff that the school administration felt it best if his role as Assistant Principal was not complicated with the Athletic Director responsibilities. Defendant USD 506 also told Plaintiff this was a "two-year plan" and if he performed well, he would be promoted to principal after he [Mr. Holtzman] was promoted. Plaintiff told Mr. Holtzman and Dr. Wyrick this was a violation of USERRA and asked to be reinstated to his previous role of Athletic Director, as well as Assistant Principal. Defendant USD 506 refused to reinstate Plaintiff to his previous role.

18. On or around May 2018 Plaintiff contacted Employer Support of the Guard and Reserve ("ESGR") for help with these issues. ESGR referred him to the United States Department of Labor ("USDOL") which initiated an investigation into Plaintiff's claims. Plaintiff's case was assigned to Mr. Theathria Coney and became case #KS-2018-00006-20-G, Mr. Raschen v. USD 506.

19. Plaintiff's once positive relationship with Mr. Holtzman and Dr. Wyrick become strained and began to impact Plaintiff's relationship with other faculty and staff. Mrs. Lori Green, a teacher and coach, told Plaintiff that USD 506 had announced to the school personnel several months prior that he would not be returning as Athletic Director.

20. On or around May 12, 2018, Mr. Greg Traxson, USD 506's employee, told Plaintiff the student council had planned to present him with a gift during that month's graduation ceremony to welcome him home. Instead, Mr. Holtzman intervened and would not allow the student council to present Plaintiff the gift. Mr. Holtzman privately and abruptly handed the gift to Plaintiff and Plaintiff was not honored before the student body as planned.

21. On or around June 25, 2018, Plaintiff requested letters of recommendation from Dr. Wyrick and Mr. Holtzman and several other faculty members in support of his application for a doctoral program. Both letters from Dr. Wyrick and Mr. Holtzman failed to mention Plaintiff's previous two years of athletic director work, while the five faculty members who provided letters specifically referenced Plaintiff's work as athletic director.

22. On or around June 26. 2018 USDOL submitted a letter to USD 506's legal team requesting, among other things, Plaintiff be reinstated to Athletic Director. Plaintiff also emailed USD 506's School Board President, Jessie Foister, on June 29, 2018 to the email address listed on the school board's website. In his email, Plaintiff requested she and the school board pay him full wages for May through July and reinstate him as Athletic Director. Ms. Foister did not respond to Plaintiff's email and later claimed she never received any email from Plaintiff.

23. On or around June 29, 2018 USD 506's legal representative, Assistant Executive Director of Legal Services, Ms. Donna Whiteman, sent a counter-resolution, in which she stated, "If the intent of USERRA is to require Kansas school districts to be locked into giving military personnel their supplemental athletic contract for the following year after they return, then it would be a disincentive to Kansas school districts to hire military personnel in those position[s] in the first place. I can't imagine that was the intent of USERRA. USERRA's purpose was to protect the military employee's main contract upon return and not to limit employers from making changes to the structure and operation of supplemental employee duties that are temporary in nature. When he returned from active duty Mr. Raschen was paid the remainder of his supplemental contract for the 2017-2018 school year even when he did not have to do the work. Mr. Raschen has received all that was legally due to him under his 2017-2018 supplemental contract."

24. On or around July 2018, USDOL interviewed Dr. Wyrick, Mr. Holtzman, Mr. Smith, and Mr. Price, and as a result, Plaintiff's working relationship with the school district continued to be strained. Defendant USD 506 treated Plaintiff as an outcast and would often

fail to include him in important school business. In years prior, Mr. Holtzman met with Plaintiff near the end of July to plan the upcoming school year, Mr. Holtzman did not do this in July 2018. Mr. Holtzman also failed to set performance expectations with Plaintiff for the upcoming school year. Plaintiff sent several emails to USD 506 requesting guidance for that school year's goals, but USD 506 ignored Plaintiff's requests.

25. In July 2018, Plaintiff emailed Mr. Holtzman a copy of his upcoming military service obligation schedule ("drill schedule").

26. From September through December 2018, USD 506 barred Plaintiff from attending regularly scheduled school district administration meetings, meetings regularly attended by other school district principals and administrators. Plaintiff was previously included and attended these meetings.

27. On September 14, 2018, USDOL sent Ms. Whiteman its findings. In relevant part, the document stated, "Based on the facts, as determined in our investigation, and the application of federal law to the facts, it is VETS' [USDOL] position that Mr. Raschen's allegations are meritorious. Specifically, we find that USD506 is not in compliance with the USERRA law. Accordingly, we believe Mr. Raschen is entitled to properly reemployed reemployment to the preservice position as Assistant Principal and Athletic Director, to include a supplemental contract as the Athletic Director for the Academic School Year 2018-2019. Granting this relief would bring USD506 into compliance with USERRA."

28. On September 25, 2018, USD 506 offered a proposed resolution in response to USDOL's findings. USD 506 offered to supplement Plaintiff's salary for the 2018-2019 school year in lieu of reinstating him as Athletic Director. USD 506 reiterated it was in the student's best interests if Plaintiff focused on his main contract the duties of as Assistant Principal. Defendant USD 506 claimed it would be unfair to the 510 high school students if Plaintiff were distracted by Athletic Director responsibilities while he is trying to improve his performance as assistant principal. Plaintiff has always had excellent performance reviews; this letter was the first time his performance had been called into question.

29. Plaintiff, through USDOL, refused USD 506's offer for salary only, and countered that he be properly reemployed to his preservice position as Athletic Director, along with reinstated pay and benefits associated with the secondary contract of Athletic Director for school year 2018-2019. Plaintiff did offer, however, to resign the position of Athletic Director (after having been properly reinstated) but retain its pay and benefits for the remainder of the school year 2018-2019.

30. Defendant refused to rehire Plaintiff for the Athletic Director position and declined the remainder of Plaintiff's counter offer.

31. On or about October 8, 2018, USD 506 held a board meeting that was attended by school administrators and faculty. The meetings are open to the public, including news media. Mrs. Colleen Williamson, a Parsons Sun reporter, attended the meeting. Dr. Wyrick confronted Mrs. Williamson about her attendance, accusing her of attending because of Plaintiff's USDOL investigation. Although Mrs. Williamson did not attend to investigate "Plaintiff's USDOL investigation," she would do so because of her encounter with Dr. Wyrick. Plaintiff did not attend this board meeting because he was at an educational conference in Wichita, Kansas.

32. On or about October 10, 2018, Dr. Wyrick aggressively questioned Plaintiff about his attendance at the educational conference, demanding a sign in roster or other evidence of Plaintiff's attendance. Dr. Wyrick, in a threatening manner, demanded Plaintiff meet with him and Mr. Holtzman so Plaintiff could brief them on the information from the educational conference.

33. Later that day, Mr. Holtzman called Plaintiff into his office and questioned him about several upcoming educational conferences and his scheduled military duty. Defendant USD 506 told Plaintiff he could not attend all these obligations. Plaintiff reminded Mr. Holtzman that his military duty had no bearing on anything school-related, and the upcoming conferences, to include the 2018 Kansas Department of Education Annual Conference and the 2018 Kansas School Public Relations Association ("KANSPRA") Conference, were

previously approved by him and Dr. Wyrick. Mr. Holtzman insisted Plaintiff change his schedule and cancel the previously approved conferences.

34. On several occasions, USD 506 inappropriately discussed Plaintiff and the USDOL investigation in a negative and derogatory manner in front of faculty and staff, often sharing Plaintiff's personal and private information with staff members. Defendant USD 506's behavior caused strain amongst faculty and staff and created a hostile work environment for Plaintiff.

35. Defendant USD 506's inappropriate behavior caused several school board members to approach Plaintiff and his family about the USDOL investigation. Mr. Greg Bogner, a school board member, texted Plaintiff's personal cell phone to inquire about the investigation and request a private meeting. And Mr. Cole met with Plaintiff's wife for five hours to discuss the on-going investigation. As a result, Plaintiff's privacy was compromised, and he became an outcast among board members, faculty, and staff.

36. On or about October 11, 2018, USDOL sent Plaintiff the closing letter to his investigation. Plaintiff requested support from the United States Department of Justice ("DOJ") to defend his USERRA rights.

37. On or about November 7, 2018, Plaintiff was attending the Kansas Association of Secondary School Principals ("KASSP") annual conference in Wichita, Kansas. Mr. Holtzman, Mr. Blackwell, and Dr. Wyrick all knew Plaintiff was at the conference because Dr. Wyrick previously signed approval for Plaintiff to attend. On that same day, USD 506 held an impromptu special school board meeting in response to Mrs. Williamson's Parson Sun article about Plaintiff's USDOL investigation. Mrs. Williamson made several attempts to get comments from various school board members regarding the USDOL investigation, but none would comment. The article was scheduled to be printed on November 8. Dr. Wyrick called Plaintiff to request his attendance at the impromptu board meeting, at which time Plaintiff reminded Dr. Wyrick he was attending the KASSP conference and could not attend. USD 506 continued with the special board meeting and according to board meeting notes published on

the District's website, Plaintiff often was the topic of discussion. Specifically, the District addressed the importance of school administrators to focus on one role in the best interest of the students. They explained this was the reason why Plaintiff would not be reassigned the supplemental duties of Athletic Director. The board also discussed how proud USD 506 is of its employees who serve in the military and as a show of appreciation and good will planned to award Plaintiff an additional $10,000 to his 2018-2019 salary.

38. On November 14, the Parson Sun printed its article about Plaintiff's situation with USD 506, which provoked USD 506 to continue harassing Plaintiff. That day, USD 506 requested Plaintiff meet with board members Mrs. Foister, Mr. Bebb, Mr. Falkinstein, Dr. Wyrick, and Mr. Blackwell. Plaintiff was harassed, intimidated and yelled at during this three-hour meeting. The board members were angry because of details disclosed in the Parson Sun article and because Plaintiff refused to accept USD 506's offer of $10,000 for his "military service." Plaintiff refused the $10,000 because while he was away on military service the prior year, the Athletic Director salary was increased from $10,000 to $20,000, making USD 506's offer even more inappropriate. Since that meeting and for the next several weeks, Plaintiff was unduly pressured to accept USD 506's offer, none of which would restore him to his previous position as Athletic Director with the commensurate salary.

39. In the weeks following the confrontation, USD 506's behavior towards Plaintiff continued to deteriorate and gravely impact his work environment, to include withholding letters of recommendation Plaintiff previously requested for his on-going doctoral program. Defendant USD 506's behavior cultivated distrust and divisiveness among faculty and staff who openly gossiped and disrespected Plaintiff. Several other media stories reported on Plaintiff's situation, which drew open criticism from board members and their families on social media, many of them calling the new stories, "fake news."

40. On or around the end of 2018 Plaintiff received notice he would be called to active duty again beginning January 2, 2019. Plaintiff timely informed district leadership, the board of education and faculty and staff of his upcoming military service obligations. During

Plaintiff's preparations for his upcoming departure Plaintiff learned his 2018 W-2 incorrectly shown he was paid the extra $10,000 previously offered to him, of which he never accepted and was never paid.

41. July 2019 Plaintiff returned from active duty and timely applied for reemployment. Unfortunately, Plaintiff's return did not improve USD 506's treatment and attitude towards him. USD 506's administration, faculty and staff continued to gossip about Plaintiff and single him out because of the previous year's DOL investigation. Plaintiff, as a Vice Principal, was consistently and purposefully left out of critical school business by other administrators, greatly reducing his effectiveness as Vice Principal.

## Violations of 38 U.S.C. §4301 *et seq*.

42. Plaintiff hereby alleges and incorporates all paragraphs 1-41 above by reference herein.

43. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

44. Plaintiff is an individual protected under USERRA, 38 U.S.C. §§ 4301-4335.

45. Section 4311 of USERRA provides, in relevant part, that a person "who is a member of,…performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied… any benefit of employment by an employer on the basis of that membership,…performance of service, or obligation."

46. A "benefit of employment" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and the opportunity to select work hours or location of employment.

38 U.S.C. 4303(2).

47. In its Fiscal Year 2010 report to Congress (published in July 2011), the Department of Labor clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

48. Section 4313(a)(1)(A) and (B) of USERRA further provides, specific to the benefit of reemployment positions, "…a person is entitled to reemployment…[and] shall be promptly reemployed in a position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay…" or "in the position of employment in which the person was employed on the date of commencement of the service in the uniformed services…"

49. "An employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service. This position is known as the 'escalator position'." 20 C.F.R. §1002.191

50. "[T]he employee's status in the reemployment position could include opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility and geographical location." 20 C.F.R. §1002.193

51. Section 4311 (c) further provides, in relevant part, that "[a]n employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

52. Defendant USD 506 knowingly and willfully violated USERRA, including, but not limited to, Sections 4311, 4313, and 4316 by denying Plaintiff benefits of employment through discriminatory practices including, but not limited to, subjecting Plaintiff to a hostile

work environment and affording him the opportunity to return to his previous position as the Athletic Director.

53. Defendant USD 506 discriminated against Plaintiff, by denying him benefits of employment "on the basis of" his "obligation to perform service in a uniformed service."

54. As a direct and proximate result of the conduct of Defendant USD 506 as set forth in this count, Plaintiff has suffered injuries and damages including but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all to his damage in an amount to be proven at trial.

55. Plaintiff alleges such violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

56. Pursuant to 38 U.S.C. §4323(h), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and other litigation expenses.

## Violations of Kansas Statute §§44-1125 *et seq*.

57. Plaintiff hereby alleges and incorporates all paragraphs 1-56 above by reference herein.

58. Plaintiff brings this claim under Kansas state law with federal court jurisdiction being conferred by 28 U.S.C. §1367(a).

59. Kansas Statutes Annotated §§44-1125 *et seq.* provides that no person shall discriminate against any member of the military because of military status, discriminate against a member of the military with respect to employment, or discriminate in employment position or status because of membership or service in the military, and or deny employment to any member of the military because of their membership or service in the military. KSA §44-1126(b).

60. A motivating factor in denying Plaintiff reemployment to the Athletic Director role was his military service obligations, in violation of §44-1126(b).

61. Defendant USD 506 discriminated against Plaintiff, *inter alia*, by failing to reemploy him in the position of Athletic Director, harassing him about his military service, forcing him to attend school business while he was on military leave, and undermining his status as Vice Principal.

62. As a direct and proximate result of the conduct of Defendant as set forth in this count, Plaintiff has suffered injuries and damages including but not limited to, loss of past and future earnings, loss of past and future benefits, non-pecuniary damages, all to his damage in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff prays for relief against Defendant as follows:

1. Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA, 38 U.S.C. § 4301 *et seq*. and KSA §44-1126(b);

2. Require that Defendant fully comply with the provisions of USERRA and KS Stat §44-1126(b) by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices under USERRA and KSA §44-1126(b) described herein;

3. Fees and expenses, including attorneys' fees and costs pursuant to 38 U.S.C. §4323(h) and KSA §44-1127;

4. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

5. Order that Defendant pay liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violations of USERRA and KS Stat §44-1126(b);

6. Grant an award for costs of suit incurred; and,

7. Grant such other and further relief as may be just, and proper and which Plaintiff may be entitled to under all applicable laws.

Respectfully Submitted,

By: /s/ *Christopher A. McElgunn*
Christopher A McElgunn, #13359
KLENDA AUSTERMAN LLC
301 N. Main Street
Wichita, KS 67202-4816
Telephone: (316) 290-4621
Facsimile: (316) 267-0333
cmcelgunn@klendalaw.com

Brian J. Lawler (*pro hac vice* pending)
PILOT LAW, P.C.
850 Beech Street, Suite 713
San Diego, California 92101
Telephone: (619) 255-2398
Facsimile: (619) 231-4984
blawler@pilotlawcorp.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable as of right by a jury in the above action.

By: /s/ *Christopher A. McElgunn*
Christopher A. McElgunn, #13359

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, KS as the place of trial for this action.

By: /s/ *Christopher A. McElgunn*
Christopher A. McElgunn, #13359

2750822